Good morning, Your Honor. Peter Dickinson of the law firm of Bush Gottlieb, representing the Trustees of the Screen Actors Guild, Pension, Health Plans, and Appellate Leagues, appellants in this case. Mr. Dickinson. This is an appeal from a Rule 12b-6 dismissal of a contract case falling under ERISA. I'd like to reserve five minutes for rebuttal. Just watch the clock, counsel. Thank you. The lower court, Judge Schiavelli presiding, erred for two primary reasons, Your Honors. The district court dismissal of the first and third causes of action, first being the direct claim against the signatory NYCA or NICA, and the third, actually the third and fourth causes of action, third-party beneficiaries, was improper since they were based on conclusions of law, sorry, pardon me, conclusions of fact with regard to the first cause of action, the meaning of compensation under the commercials contract, a collective bargaining agreement, and with regard to the third and fourth causes of action, that the endorsement contract and the agency contract were merely indemnification agreements, not susceptible to a third-party beneficiary argument. On the second cause of action, the district court erroneously concluded there's no cause of action against the non-signatory tailor-made. There are three elements in the cases where this court and other courts have recognized that a non-signatory can be liable for ERISA contributions, where there's materially inseparable interest between the non-signatory and the signatory, where the intent and conduct by the non-signatory is to evade collective bargaining obligations, and when there's been assumption of collective bargaining obligations. All are present here. Turning to the first. Well, let's talk about that. I'm having trouble understanding why the advertising agency has any duty whatsoever to pay over funds from tailor-made. These are two separate entities, are they not? They happen to have some joint interest in the fact they'd like to advertise Mr. Couples, but short of that, how can one be held responsible to undertake to do anything with respect to the non-signatory? Not simply sharing an interest. The point and purpose of the relationship between tailor-made and the signatory agency was to produce television commercials under the SAG contract. Neither the complaint nor the collective bargaining agreement states the compensation must be paid by the signatory. On the contrary, the collective bargaining agreement, section 46, says the contributions are due on compensation for payment of covered services. The defendants entered into two contracts, dual contracts, that should be read together, because both hired Fred Couples, both paid Fred Couples for the same services, but the signatory reported a small portion of the compensation for covered services. The bulk of the compensation was paid by the non-signatory in an effort to avoid paying the pension health contributions on the bulk. But what is it that requires the signatory to report the full amount, the combined amount, put it that way? The collective bargaining agreement, Your Honor. Well, the agency has the agreement, and they're dealing with a whole bunch of different trustees. There's the grips and the gaffers and the teensters and the electricians. They all have their hands out for part of this money. But why is the fact that the celebrity has his own agreement with TaylorMade, probably some kind of exclusive arrangement with TaylorMade, why does that give the trustees any right to have TaylorMade pay something that the agency is already paying to the unit or the trustees? Your Honor is anticipating the joint implore of the second cause of action, where we seek to hold TaylorMade itself liable. With regard to the first cause of action, though, that's just against NYCA, the signatory, based on the language of the collective bargaining agreement that says contributions are due on all compensation for covered services. All right. But are you saying that the agency should have made contributions based on the full amount? In other words, the agency should have advanced that? The agency was liable under the commercials contract to pay contributions on compensation for covered services. It doesn't say paid by the agency. It's very clear. Well, it's in the passive voice. It applies to contributions earned by performers in NYCA's employ. So that supports your argument. It doesn't say paid by whom. It just says earned by persons in their employ. Your Honor is quite correct. What I'm looking for, though, is what is it that establishes the duty on the advertising agency to pay more than the share that they had some direct responsibility for? The advertising agency was responsible under the collective bargaining agreement to report on compensation for covered services. They reported on a small portion of that. Is it a reporting issue or a payment issue? It's a reporting and a payment issue. The practice in the industry under this contract, which we didn't – which the Court never heard about because the case was dismissed under Rule 12-6, is that this is very typical for decades, that advertisers hire celebrities. Advertisers then hire a signatory ad agency to produce commercials using those celebrities. Your point, as I take it, is this was prematurely cut off at the pleading stage. You might lose once you get into what the contract actually meant. But as far as sufficient ambiguity to get you to the next phase, that's really your argument on the first claim, as I understand it. That's correct. If the case had proceeded, we would have submitted the evidence to show that the contract has been applied in this way and understood in this way for decades by the bargaining parties, by the industry, and that contributions are reported by the agencies on the total compensation for acting services, and that what we're facing here is effectively a scheme to divert the majority of the compensation for acting services by having the agency report a small piece of it. And Taylor made – and Nika's point is to tell the trustees in the game, we submit the contributions based on scale. You have no further recourse. ERISA was not intended – the remedial purpose of ERISA is not served by cutting off the trustees' ability to inquire. Taylor made just a client of the agency. They hired the agency to produce a finished product, a show, a production with their celebrity in it. But they're just a client, aren't they, of the agency? They don't have any agreement with the trustee about anything. No, but when they stated in their endorsement agreement that they would comply with the screen – Taylor made, stated they would comply with the Screen Actors Guild contract and then hired an ad agency that's signatory to that contract, and contributions are reported. Our view is, articulated in the second cause of action, is that they have now assumed the obligation by their course and conduct and that the interests are now materially inseparable between the two companies, not because they're alter ego, but because they have now gone out and undertaken contractually to assume those obligations. Is that a Fair Labor Standards Act argument? The joint employer argument has been adopted in almost every labor statute. Clearly, with regard to ERISA, it's a more difficult question because, as the cases have outlined in our briefs, we submit that in the Ninth Circuit, the courts have eschewed a bright-line rule, have not closed the door to situations where there's materially inseparable interest, where there's an assumption by a non-signatory of a labor contract obligation. That door has been left open for a case like this. Previously unencountered by the courts of appeals, you will search long and hard to find factual pattern very similar to this, none of which got developed because of the courts similarly dismissing the case at the pleading stage. Now Judge Schiavelli is no longer on the bench, but we're asking that the court remand the case for development of these facts to give the trustees the opportunity to show that what the contract means and what the case law means is that this type of scheme should not go unremitted. I don't see that you're below five minutes, but it's your choice. I'll reserve. Thank you. Thank you, Your Honor. May it please the Court, my name is Robert Gerber and I represent NYCA, Inc. and TaylorMade Golf Company, Inc. I'd like to try to go through and address Mr. Dickinson's points as best I can. I think that one of the key issues in this case is this doctrine of joint employer. I think that the last point that Mr. Dickinson made is that you will search long and hard to find the issue of joint employer in an ERISA case, and that's because there is no ERISA case finding joint employer status. The closest we get to is the case, the Gentner case, and I believe Judge O'Scanlan may have been on that panel, although he didn't author the opinion. There was a footnote in that case that suggested that joint employer may be a basis for showing material inseparability, but that case did not hold so. It was a Pratt Farnsworth case and it held that a showing of single employer status, which is different from joint employer, could be used to form a basis of material inseparability. There's really only three cases in which joint employer has been held to be used to show liability, and that is alter ego, single employer status, or fraud. Neither of those three things were pled in the second amended complaint in this case. There was leave to amend granted by the judge for the trustee plans to come back in and alleged facts sufficient to show one of those three elements, those three exceptions to the rule, and there were no facts pled. In the reply brief in this appeal is the first time we really hear the trustees saying, oh, there are issues of fact we need to be remanded. Those issues of fact could have been pled when given the chance in the district court. They were not so pled. There's no reason to give them a chance to plead it out. Counsel, from my perspective, the most difficult claim for your client is the first one, the commercials contract, the direct contractual claim, for the reason that I mentioned in my conversation with opposing counsel, and that is that the contract is worded in a curiously passive form. Nowhere does it clearly require that the money pass directly from NYCA in order for the compensation to have to be dealt with in terms of these contributions. Why isn't there enough in the pleadings having set out that contract to get to the next stage? I mean, you might win at summary judgment, you might win at trial, but I don't understand why that's an insufficient statement at the pleading stage of the contract claim, claim one. I think you're referring to section 46, which talks about contributions to pension and health plans, but that section needs to be read in the form of and in the sense of all of the portions of the contract, which is before the court. You need to understand that section 46 is written in terms of what the obligations of the producer are. The producer here is NYCA. The producer is defined earlier in the contract on the first page as the entity that hires the principal performer, which is the case here, and also that the principal performer is the one that is producing, being engaged by producer on page record 110 and 111 of the supplemental record. And then you get to section 46, which talks about what the producer's obligations are. So 46. In this context, producer is tailor-made or producer? Producer is NYCA. Is NYCA. And advertiser in the contract is tailor-made. So tailor-made retains producer to produce the commercial. And then when you look back at the SAG Screen Actors Guild contribution form, which is 304 of the supplemental record, it requires that only producers who are signatory to an applicable collective bargaining contract of the Screen Actors Guild are eligible to make contributions to the Screen Actors Guild. You're not saying that you're not eligible, are you? We're saying we are ineligible because we're not signatories and we do not meet any of the three standards under ERISA for contributions to this plan. Excuse me. Where are you reading from? I'm reading from 304 of the supplemental record. It's called Important Instructions. It's a reporting form, and it's paragraph 6 of that form. This is a form that's used to submit contributions by the producer to the Screen Actors Guild trust funds, and it says that... Let me just clarify something. Sure. In your view, if the form and the actual terms of the contract were in any way inconsistent, I'm not suggesting they necessarily are, but if they were, wouldn't the contract control over the form? You mean the other terms of the contract? Yes. I think you need to read all of the contract. Are the forms inside the contract, or are they just forms? The forms are addenda to the contract.  Appendices are addenda, however they're described. I can try to clarify that. No, I haven't looked at the issue of what they're described as in terms of the addenda or exhibits, but I'm sure that's in the record in connection with the commercials contract. Counselor, could I go back to paragraph 46? Yes. Which subparagraph is the controlling one, so far as your argument that you are excluded from liability to contribute? Well, there's three main sections. First is Part A, which says that producers shall contribute. Tailor-made is not a producer. The second one is Part C, the gross compensation provision, which describes salary, session fees, and other compensation, although I believe Judge Graber pointed out it does not say for whom pays those amounts. But if you read that section in connection with the other parts of the contract, we think it's clear that it means producer. And then under Part E, it says where producer enters into a contract with a principal performer, under which covered services and non-covered services are to be provided. There is no contract alleged in this case in which NYCA entered into a contract with the principal performer, couples, to enter into covered services and non-covered services. What's alleged is that tailor-made, the advertiser, entered into such a contract. Section 46 does not cover or anticipate that kind of arrangement. So it's those three provisions of Section 46 that we believe support our argument. Some of the other points made that there is practice in the industry for how things are arranged between advertisers and producers. None of those facts were alleged and could have been alleged when given leave to amend, and leave to amend was rejected by the plans. They decided not to allege. Tailor-made is a separate entity, and we have facts in the record that were allowed to be in the record because of judicial notice issues and because of allegations in the complaint that allowed the court to consider those facts. And tailor-made and the ad agency are separate entities. There's no common control. There's no common ownership. There's no joint effort. There's no joint control. There is absolutely nothing in the record that suggests that these entities are in any way jointly controlled or held to be single employers, alter egos, or engaged in fraud. There is an allegation that tailor-made and NYCA engaged in a scam, but that certainly isn't enough to comply with Rule 9b pleadings involving fraud. There's an allegation that NYCA and tailor-made attempted to deliberately hide from the plans the true compensation paid to couples. There is no allegation, though, that there was an attempt to hide from the plans the gross compensation paid by the producer because what was alleged in the first cause of action is that the producer did pay an amount based on scales or the amount paid to couples. But what is alleged to not be a cause of action or not be allowed to be a cause of action is that the plans alleged that NYCA should have reached out, figured out what tailor-made was paying to couples, and then used that as a basis to compute what should have been paid to the plans. And there's nothing in Section 46, there's nothing in the commercials contract, there's nothing in the law that says the ad agency, the producer, must go out and figure out what a third party is paying in order to make contributions. Counsel, this is a 12b-6 dismissal. It is. And it does force us to look more carefully at the language of 46c, which describes gross compensation. And I'm wondering whether we can properly say that as a matter of plain meaning in the contract that one can exclude the tailor-made portion. Now your argument, of course, is that you think it really only applies to producers, but I'm just wondering whether we can adopt that as a matter of law at this stage. Well, why shouldn't this go to trial, or go to a fact-finding stage at least? For part of the reasons I mentioned earlier, Your Honor, which is that the contract read as a whole shows that producers are the ones that employ the principal performers. Producers are the ones that have the reporting and payment obligations. Producers are the ones mentioned under section 46 to be required to pay gross compensation. If producers are required to pay that gross compensation pursuant to paragraph C, and it's only where producer enters into a contract with principal performer where there are covered services and non-covered services where there has to be an allocation and a payment based on that allocation. How is covered services defined? Covered services is defined as the provision of acting services. There is also a provision that says whether or not those acting services are provided. So covered services would be defined as going in and doing a commercial and making an appearance on television, or at least having the covered service definition. I can try to do that. I didn't catch it in 46. It may be in an earlier part. I think it obviously pursues 46, but that's a large contract. Your Honor, I don't have an index of the agreement, and I cannot at this point find the definition of covered and non-covered services. Well, you've got a whole bunch of celebrities running around that have very interesting contracts with various brands, and they're branding and tie-ins with all kinds of stuff that these celebrities do. What they wear, where they go, what kind of airplanes they fly in, all this stuff is all under some kind of a contract, and they get paid for it. But the part that the producer of a commercial is using this celebrity for, there's probably some shooting schedule, some standby time, some call time, some waiting time, some all kinds of stuff that the celebrity is getting paid for by the producer, one hopes. Are those covered services? Are those described anywhere? Those are non-covered services, and those are paid for by the advertiser, which is different from the producer. The producer, remember, is the one that makes the commercial. The one making the commercial, the producer, is the only one paying for covered services, the actual television commercial. In this case, the celebrity, I think the record shows got $102,000 or something for what he did that the agency claims was covered services. The plans were got $102,000, contributed by the producer, by the producer of the television commercial. So now they want to reach into other parts of the celebrity's agreement with the TaylorMade. Yes. And there must be lots of activities that go on that don't have anything to do with a particular commercial. Correct. How do they divide up what part of that melon gets carved one way and what part gets carved the other way? There is no provision that would describe what covered services means with respect to the producer and to what's covered under the collective bargaining agreement versus what is called a golfer for its advertising of wearing logos and golfing and doing the things that you describe versus television producing. There is no magic number. Is it significant that NYCA may be both producer and advertising agency in this case? They are one in the same under the contract. The advertising agency and the producer are the same under the commercial. In this particular case, because 46 talks about both categories, a separate category. 46 talks about producers and advertising agencies. 46A? Yes, advertising agency signatories to letters of adherence. Producers are those that have actually signed off on the collective bargaining agreement and letters, advertising agency signatories to letters of adherence are those that come in later and  So in this case, NYCA is solely the producer. Our questions have taken you past your time. Your time has expired. We will hear back from Mr. Dickinson in medicine reserve. Thank you, Your Honors. Briefly, the first cause of action and the identification cause of action and survival rule 12B6 dismissal for the reasons I've argued. Well, I'm having trouble looking at 46. What is it in 46 that compels NYCA to make any payments on anything that they haven't directly participated in? Payments for performance of covered services, which are defined as acting in television, Internet, etc. Do you have the covered services section? It is not unusual in this industry for contributions to be based on what third parties pay, for example. Okay, but we're dealing with a particular plan in specific contract definition. So what is it in 46 that you rest your case on that NYCA was supposed to pay not only its share, but also Taylor Ray's share? Section 46A, second sentence. Producers shall contribute an amount equal to 14.3% on all gross compensation paid to principal performers as herein defined with respect to television commercials. And then part C defines gross compensation to include amounts paid to an employee without saying who pays for them. Correct. This is a mix. With respect to that sentence, producers shall contribute an amount equal to so-and-so percentage of all gross compensation paid. Wouldn't that imply that it's paid by the producer? It's ambiguous, isn't it? The issue of whether there's an ambiguity in this language is a mixed question of law, in fact. It is not appropriate for dismissal on a 12B6. What's your response to opposing counsel's argument that we look at the contract as a whole and when one does that, then ambiguity disappears? The contract should be looked at as a whole and also in light of the custom and practice in the industry and the way this contract, these many provisions that sometimes conflict and sometimes could be turned ambiguous, have been applied by the people who negotiate the contracts. Is that advertising agencies like NECA pay contributions based on what third parties pay the performer all the time? If we are permitted to litigate this case, we will show this agency has paid for other clients on what the advertiser has paid the performer. It is no mystery, and in fact it is disingenuous to suggest that the ad agency's liability is limited to paying whatever number it comes up with. When a performer like Fred Couples, who has paid $1.5 million, they reported $100,000 in compensation. They only pay contributions 14% of that $14,000. So you have a huge contract that the advertiser and the agency divide up the compensation into two contracts. And we submit and we allege in our pleading that that was done to avoid the obligation to pay pension health contributions. Not just Fred Couples, but of course an advertiser like TaylorMade employs numerous celebrity golfers and other celebrities to endorse their products. The bargaining parties are entitled to calculate contributions in whatever manner they choose in their bargaining agreement. We know this through the Walsh v. Schreck case. They have done so, and it is improper to dismiss it based on a pleading which met the notice pleading standards and deny the trustees the opportunity to show what the contract means and how it is applied by these parties and other parties. Your time has expired. Thank you, Counsel. The case, as just argued, will be submitted for decision, and the Court will take a 10-minute recess.
judges: Goodwin, O'scannlain, Graber